Kenneth L. Baum, Esq.
**LAW OFFICES OF KENNETH L. BAUM LLC**
167 Main Street
Hackensack, New Jersey  07601
201-853-3030
201-584-0297  Facsimile
Attorneys for Defendant Educational Credit Management Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMMANUEL A. ADIGUN,<br><br>              Plaintiff,<br><br>        v.<br><br>INTERNAL REVENUE SERVICE, *et al.*,<br><br>              Defendants. | CIVIL ACTION NO. 1:20-cv-03676 (AT)(SN)<br><br>Civil Action |

---

**DEFENDANT EDUCATIONAL CREDIT MANAGEMENT CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S ORDER TO SHOW CAUSE PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

Of Counsel and On the Brief:
    Kenneth L. Baum, Esq.

## **PRELIMINARY STATEMENT**

Defendant Educational Credit Management Corporation ("ECMC") submits this Brief in support of its motion to dismiss Plaintiff Emmanuel A. Adigun's ("Plaintiff") Order to Show Cause (the "OTSC"), which is serving as Plaintiff's *de facto* complaint in this action that was removed from the Bronx County Supreme Court, as against ECMC pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion"). As demonstrated below, Plaintiff's failure to state a cause of action upon which relief may be granted against ECMC warrants dismissal of the OTSC.

The facts of this case are simple. Plaintiff originally obtained student loans under the Federal Family Education Loan Program ("FFELP") in 1978, 1981, and 1982 (the "Loans"). The lender was Knickerbocker Federal Savings & Loan Association (the "Lender") and the Loans were guaranteed by New York State Higher Education Services Corp. ("NYSHESC"). When Plaintiff failed to honor his repayment obligations and the Loans became more than 180 days delinquent, the Loans went into default and a default claim was filed by the Lender, pursuant to the requirements of 34 C.F.R. § 682.102(g). NYSHESC paid the default claim on or about July 28, 1989, and all right, title, and interest in the Loans was transferred by the Lender to NYSHESC. On or about November 27, 2008, NYSHESC transferred all guarantor responsibilities, as well as all right, title, and interest in and to the Loans, to ECMC, which is a guarantor under FFELP. As of September 7, 2020, 2019, the total balance owing on the Loans was $23,034.36, which is comprised of an aggregate principal balance of $7,906.85, accrued interest of $10,682.14, and fees and costs of $4,445.37.

In his OTSC, Plaintiff is seeking to have the Court terminate his annual tax refund offsets and monthly Social Security offsets and obtain a refund of all monies offset from those sources,

1

claiming that his student loans were previously paid in full. Plaintiff, however, fails to state a cause of action upon which relief may be granted. First, the FFELP Loans that Plaintiff obtained from the Lender and the accompanying Notes are *not* the same loans referenced in the OTSC. Second, because ECMC, as a guarantor under FFELP, was complying with its statutorily-mandated responsibilities when it effected Federal offsets against Plaintiff, Plaintiff's state law claims are preempted. Third, the relief sought in the Order to Show Cause constitutes an improper attempt to circumvent the lack of a private right of action under the Higher Education Act of 1965 ("HEA," 20 U.S.C. § 1071, *et seq*.), which specifically and exclusively empowers the Secretary of the Department of Education to take remedial actions against an agency which fails to comply with the requirements set out in the FFELP regulations. Accordingly, because Plaintiff's OTSC fails to state a cause of action upon which relief may be granted against ECMC, it should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## STATEMENT OF FACTS

The relevant facts in support of the Motion are set forth in the Declaration of Kerry Klisch (the "Klisch Dec.") filed herewith. For the Court's convenience, a summary of those facts is included below. Unless otherwise noted, the capitalized, defined terms herein shall have the same definitions ascribed to them in the Klisch Dec.

ECMC is a guarantor in the FFELP and also provides specialized guarantor services to the United States Department of Education ("ED") and other FFELP guaranty agencies, including accepting transfer of title to certain student loan accounts. (Klisch Dec., ¶ 2.) ECMC is a not-for-profit corporation duly organized under the laws of the State of Minnesota. (*Id.*)

On May 26, 1978, March 13, 1981, and March 28, 1982, Plaintiff signed promissory notes requesting student aid under FFELP (together, the "Notes"). The lender was

Knickerbocker Federal Savings & Loan Association (the "Lender"). The student loans made pursuant to the Notes (together, the "Loans") were disbursed on or about May 26, 1978, in the original principal amount of $2,500.00; March 31, 1981, in the original principal amount of $2,500.00; and April 16, 1982, in the original principal amount of $2,000.00. The Loans were guaranteed by NYSHESC. (Klisch Dec., ¶ 3.)

When Plaintiff failed to honor his repayment obligations under the Notes and the Loans became more than 180 days delinquent, the Loans went into default and a default claim was filed by the Lender. NYSHESC paid the default claim on or about July 28, 1989, and all right, title, and interest in the Loans was transferred by the Lender to NYSHESC. (Klisch Dec., ¶ 4.) On or about February 12, 1993, NYSHESC obtained a judgment against Plaintiff in the amount of $,7,951.81. (*Id.*, ¶ 5.) On or about November 27, 2008, NYSHESC transferred all guarantor responsibilities, as well as all right, title, and interest in and to the Loans, to ECMC. As of September 7, 2020, the total aggregate balance owing on the Loans was $23,034.36, which is comprised of a principal balance of $7,906.85, accrued interest of $10,682.14, and fees and costs of $4,445.37. (*Id.*, ¶ 7.) All activity by ECMC was performed in its capacity as a FFELP guarantor and pursuant to its duties thereunder. (*Id.*, ¶ 8.)

## LEGAL ARGUMENT

I. **PLAINTIFF'S OTSC FAILS TO STATE A CAUSE OF ACTION UPON WHICH RELIEF MAY BE GRANTED AND SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6).**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may assert as a defense to a complaint, a motion for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). As the Supreme Court has held, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 556). Moreover, "[t]he plausibility standard is not akin to a, 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ibid.* (citing *Id.*)

Here, the FFELP Loans that Plaintiff obtained from the Lender and the accompanying Notes, which are now held by ECMC, are *not* the same loans referenced in the OTSC. Even assuming all the allegations in the Complaint are true, however, they nevertheless fail to state a claim for relief that is "plausible on its face," as described below.

A. **The Duties of a Guaranty Agency Under the HEA.**

Congress passed the Higher Education Act of 1965 ("HEA", 20 U.S.C. § 1071, *et seq.*) to "keep the college door open to all students of ability, regardless of socioeconomic background." *Pelfrey v. ECMC*, 71 F.Supp.2d 1161, 1162-63 (N.D. Ala. 1999), *aff'd* 208 F.3d 945 (11th Cir. 2000); 20 U.S.C. § 1070(a).

4

Among other things, the HEA established the Federal Family Education Loan Program ("FFELP"). 20 U.S.C. § 1071. The FFELP was formerly referred to as the Guaranteed Student Loan Program ("GSL") before being renamed in 1992. ECMC operates as a guaranty agency under the HEA. *See e.g. Rowe v. ECMC*, 559 F.3d 1028, 1030 n.1, 1032 (9th Cir. 2009).

In accordance with the HEA, student loans are guaranteed by either a state agency or non-profit organization "that has an agreement with the Secretary under which it will administer a loan guaranty program under the Act." 34 C.F.R. § 682.200; 20 U.S.C. § 1072(a)(1). Such state agencies or non-profit organizations are referred to as guaranty agencies.

Guaranty agencies enter into agreements with the DOE that set forth "such administrative and fiscal procedures as may be necessary to protect the United States from the risk of unreasonable loss thereunder, to ensure proper and efficient administration of the loan insurance program, and to assure that due diligence will be exercised in the collection of loans insured under the program . . ." 20 U.S.C. § 1078(c)(2); 34 C.F.R. § 682.404(l); 34 C.F.R. § 682.410(b)(6).

The Secretary of Education is authorized to prescribe rules and regulations as may be necessary to carry out the purpose of the HEA. 20 U.S.C. § 1082(a)(1). Said regulations are found in the Code of Federal Regulations, which sets forth, in great detail, the wide variety of activities a guaranty agency must undertake on a guaranteed student loan. *See e.g.* 34 C.F.R. §§ 682.400-682.423.

The due diligence obligation owed by the guaranty agency to the DOE requires that the guaranty agency "engage in reasonable and documented collection activities." 34 C.F.R. § 682.410(b)(6)(i). This obligation specifically includes a number of actions the guaranty agency must perform in attempting to collect on any defaulted, reinsured loans it holds, such as a

sequence of dunning letters and telephone contacts, reporting the defaulted loan to credit bureaus, federal and state income tax refund offsets, non-judicial administrative wage garnishment, and, where appropriate, collection litigation.  34 C.F.R. § 682.410(b)(6)(ii)-(vii).  The DOE is empowered to take remedial actions against a guaranty agency which fails to comply with these requirements.  *See e.g.* 34 C.F.R. § 682.413(b)(2) and (c)(1).

Moreover, guaranty agencies provide borrowers like Plaintiff with certain disclosures pursuant to these federal regulations, about the potential consequence of wage garnishment among other things.  Guaranty agencies must also contact borrowers via telephone in their attempts to collect the loans.  34 C.F.R. §§ 682.410(b)(6)(ii); 682.410(b)(6)(vi); 682.411(d)(1); 682.411(d)(3); 682.411(l); 682.411(m).

In summary of the foregoing, guaranty agencies undertake an enormous amount of responsibilities and are involved in the loans they guarantee from the origination of the loan to the final payoff.  Effectuating a Federal offset is just a small part of the duties guaranty agencies like ECMC are required to perform under the HEA and Code of Federal Regulations.

    **B.**  **ECMC is a Guaranty Agency Under the HEA.**

ECMC is a guaranty agency under the HEA.  It is a non-profit organization that has an agreement with the DOE under which it helps to administer the FFELP.  Many courts have concluded that ECMC is a guaranty agency in previous cases similar to the instant case.  *See e.g. Pelfrey v. ECMC*, 71 F.Supp.2d 1161, 1180 (N.D. Ala. 1999), *aff'd* 208 F.3d 945 (11th Cir. 2000); *Black v. ECMC*, 459 F.3d 796, 801 (7th Cir. 2006); *In Re Howe*, 2008 U.S. Dist. LEXIS 89161 at *2 (C.D. Cal. 2008); *Rowe v. ECMC*, 559 F.3d 1028, 1032 (9th Cir. 2009); *Rowe v. ECMC*, 730 F. Supp. 2d 1285, 1288 (D. Or. 2010); *Watkins v. ECMC*, 2011 U.S. Dist. LEXIS 55328 at *11

(E.D. Va. 2011); *Bennett v. Premiere Credit*, Case No. 11-cv-124 at *5 (S.D. Ga. Oct. 20, 2011) *aff'd,* Case No. 12–128592013, WL 310066 (11th Cir. 2012).

ECMC, as a FFELP guarantor, is required to perform the numerous duties set forth in the Code of Federal Regulations as discussed above. ECMC also provides specialized guarantor services to the DOE.

### C. Plaintiff's State Law Claims Are Preempted By Federal Law.

To the extent Plaintiff's claims are based on state law, they are preempted by the HEA, which is federal law. Preemption under the HEA may be express or implied. *Chae v. SLM Corp.*, 593 F.3d 936, 942 (9th Cir. 2010). Express preemption occurs where federal law explicitly defines the extent to which its enactments preempt state law. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299 (1988). Implied preemption occurs where there is conflict between the HEA and state law, or where complying with state law would hinder compliance under the HEA. *Cadle Co. v. Banner*, 394 B.R. 292, 304 (D. Conn. 2008).

Preemption may occur directly through congressional action or by federal agencies acting under congressional authority. *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1263 (9th Cir. 1996). As discussed above, in the student loan collection field, Congress and the DOE have established an extensive, elaborate, and preemptive set of federal statutes and regulations governing lenders and guaranty agencies like ECMC. This framework both expressly and impliedly preempts Plaintiff's claims.

#### i. Plaintiff's State Law Claims Are Expressly Preempted by the HEA.

Plaintiff claims that ECMC improperly effectuated offsets against his tax refunds and Social Security benefits. However, federal law specifically provides for ECMC as a guaranty agency to pursue various collection efforts on defaulted loans, including "attempt[ing] an annual

7

Federal offset against all eligible borrowers." 34 C.F.R. 682.410(b)(6)(v). Accordingly, Plaintiff's allegations of state law violations associated with Federal offsets are expressly preempted by the HEA.

> ii. **Plaintiff's State Law Claims Are Preempted by the Code of Federal Regulations.**

Express preemption may be found based on "the text of the provision, the surrounding statutory framework, and Congress's stated purposes in enacting the statute." *Chae*, *supra*, at 942. Where express preemption language exists, the Court must interpret the provision and "identify the domain expressly pre-empted' by that language." *Medtronic, Inc. v. Lora Lohr*, 518 U.S. 470, 484 (1996).

As noted above, the HEA authorizes the DOE to "prescribe such regulations as may be necessary to carry out the purposes" of the FFELP. 20 U.S.C. § 1082(a)(1).) Under that authority, the DOE has promulgated a series of comprehensive regulations, including regulations that articulate the standards for collecting student loans and direct the pre-litigation collection efforts of lenders, guaranty agencies, and third-party debt collectors. 34 C.F.R. §§ 682.410 and 682.411.

Here, ECMC's allegedly wrongful conduct is governed by 34 C.F.R §§ 682.410 and 682.411. *See e.g.* 34 C.F.R. §§ 682.410(b)(6)(ii); 682.410(b)(6)(vi); 682.411(d)(1); 682.411(d)(3); 682.411(l); 682.411(m). These Regulations also contain express preemption language:

> "Preemption of State law.
> The provisions of paragraphs (b) (2), (5), and (6) of this section preempt any State law, including State statutes, regulations, or rules, that would conflict with or hinder satisfaction of the requirements of these provisions." (34 C.F.R. § 682.410(b)(8).)
> \* \* \*
> "Preemption.

8

> The provisions of this section . . . Preempt any State law, including State statutes, regulations, or rules, that would conflict with or hinder satisfaction of the requirements or frustrate the purposes of this section . . ."  (34 C.F.R. § 682.411(o).)

Courts consistently rely on this language to find state law claims implicating the HEA and its related regulations to be preempted.  *See e.g. Hunt v. Sallie Mae, Inc.*, 2011 U.S. Dist. LEXIS 78306 (E.D. Mich. July 19, 2011) at *3 ("Plaintiff's state-law claims are expressly preempted by the language in 34 C.F.R § 682.411(o)"); *Martin v. Sallie Mae, Inc.*, 2007 U.S. Dist. LEXIS 90418 (S.D. W. Va. Dec. 7, 2007) at *8 (holding that the HEA "preempts any state cause of action that conflicts with it.").

The DOE has also issued a significant formal interpretation which states that it is the "Secretary's intention to preempt State law" by issuing a regulatory framework for pre-litigation collection, and explains that recognizing liability under inconsistent state law would "thwart the Congressional intention implemented in the regulations."  Said interpretation further states "that 34 C.F.R. § 682.410(b)(4) and 34 C.F.R. § 682.411 preempt State law, including State case law, statutes, and regulations that are inconsistent with the provisions" of the HEA.  55 Fed. Reg. 40120-01.  Therefore, as the Ninth Circuit has observed, pursuant to the DOE's interpretation, state claims are preempted in any circumstance where state law would otherwise regulate pre-litigation collection activity.  *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1263 (9th Cir. 1996); *Pirouzian v. SLM Corp.*, 396 F. Supp. 2d 1124, 1129 (S.D. Cal. 2005); see also *Seals v. Nat'l Student Loan Program*, No. CA-02-101-5, 2004 WL 3314948, (N.D.W.Va. Aug. 16, 2004) at *3, 6 (holding that HEA preempts claim for improper collection practices under state law) *aff'd* 124 Fed. App'x 182 (4th Cir. 2005) (per curiam).)

Accordingly, Plaintiff's state law claims are preempted.

9

### iii. Plaintiff's State Law Claims Are Preempted Because They Prohibit, Restrict, or Impose Burden on Pre-Litigation Collection Activity.

Even if Plaintiff's state law claims are not expressly preempted by 20 U.S.C. § 1098g, 20 U.S.C. § 1095a, 34 C.F.R. § 682.410(b)(8) and/or 34 C.F.R. § 682.411(o), they are nevertheless impliedly preempted because they conflict with the HEA and therefore hinder or prohibit the collection activities of guaranty agencies.

In this regard, the case law is clear that the HEA preempts all state laws regarding pre-litigation collection activity. In *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1266 (9th Cir. 1996), the Ninth Circuit held that Oregon state law regarding collection activity were preempted by the HEA in its entirety, and defined the breadth of the preemption as follows:

> "[T]he preemption includes **any State law** that would hinder or prohibit any activity taken by third-party debt collectors prior to litigation." (*Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1266 (9th Cir. 1996), emphasis added.)

The *Brannan* Court based its decision on the DOE's interpretation of the regulations governing pre-litigation collection activity, including 20 U.S.C. §§ 1078(c), 1080(a),(b); 34 C.F.R. §§ 682.410 and 682.411.

The *Brannan* court also noted:

> ". . . exposure to lawsuits under fifty separate sets of laws and court systems could make lenders reluctant to make new federally-guaranteed student loans." (*Brannan*, *supra*, at 1263.)

Similarly, as Plaintiff's state law claims all relate to alleged improper pre-litigation collection activity by ECMC, they are preempted as a matter of law.

### iv. Plaintiff's State Law Claims Are Preempted Because They Conflict with the HEA.

Conflict preemption exists "where the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990).

Here, conflict preemption applies to Plaintiff's state law claims because, as Plaintiff would have them applied, they would conflict with the due diligence and collection requirements of the HEA, and therefore create obstacle to the congressional purpose and objectives of the HEA.

In line with this reasoning, the Ninth Circuit in *Chae* preempted state law claims based in part on Congress's direction to the DOE that it aimed for uniformity of FFELP regulations. The Ninth Circuit stated:

> "***Permitting varying state law challenges across the country***, with state law standards that may differ and impede uniformity, ***will almost certainly be harmful to the FFELP* . . . *Congress intended uniformity*** within the program. The statutory design, its detailed provisions for the FFELP's operation, and its focus on the relationship between borrowers and lenders persuade us that Congress intended to subject FFELP participants to uniform federal law and regulations . . . Having carefully considered the FFELP and the purposes of Congress in the HEA, we conclude, ***beyond any doubt***, that subjecting the federal regulatory standards to the potentially conflicting standards of fifty states on contract and consumer protection principles would stand as a severe obstacle to the effective promotion of the funding of student loans. Such an obstacle, which we consider hostile to the purposes of Congress in this program, ***must bow to the overriding principles of conflict preemption and federal law supremacy***." (*Chae v. SLM Corp.*, 593 F.3d 936, 945, 947, 950 (9th Cir. 2010) (emphasis added).)

Conflict preemption has been applied in many other cases as well. *See e.g. Seals v. Nat'l Student Loan Program*, No. CA-02-101-5, 2004 WL 3314948, at *3, 6 (N.D.W.Va. Aug. 16, 2004) (West Virginia state laws imposed additional burdens on student loan collection activities

11

and thus was preempted under the HEA and its regulations), *aff'd*, 124 F. App'x 182 (4th Cir. 2005) and *Hunt v. Sallie Mae Inc.* WL 2847428 (E.D. Mich. 2011) (Plaintiff's state-law claims conflicted with the HEA and were accordingly preempted.).)

If Plaintiff were permitted to pursue his state law claims against ECMC in this case, it would create conflicting requirements in New York compared to the remaining states; specifically, ECMC would be subject to both the HEA and federal regulations as well as Plaintiff's state law claims, leading to the unreasonable result that ECMC would be faced with potential liability in State Court for complying with the requirements of the HEA and federal regulations. Such a conflict would hinder the DOE's ability to regulate guaranty agencies like ECMC, and interfere with the DOE's enforcement powers as authorized and intended by Congress.

The HEA's uniform application is a clear objective intended by Congress. *Brannan*, *supra*, at 1264; *Chae*, *supra*, at 944-945. The statutory language of the HEA's FFELP explicitly calls for uniformity multiple times. 20 U.S.C. § 1082. A lack of uniform application of New York law and the HEA would stand as an obstacle to congressional objectives. Plaintiff's state law claims conflict with the HEA and are therefore preempted.

### D. Plaintiff's Claims Are an Improper Private Right of Action.

To the extent Plaintiff is claiming ECMC did not properly follow the Federal offset process, Plaintiff has no independent cause of action for alleged violations of the HEA. As federal appellate courts have made clear in an analogous situation, "[w]hile the HEA endows debtors with certain rights during the wage garnishment process, the HEA expressly empowers only the Secretary of Education—not debtors—with the authority to enforce the HEA and rectify HEA violations." *Bennett*, *supra*, 504 Fed. Appx. at 875 (citing *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113,

1123 (11th Cir.2004)).  The Eleventh Circuit concluded, "Therefore, '[i]t is well-settled that the HEA does not expressly provide debtors with a private right of action.'"  *Id.* (citing *Cliff*, 363 F.3d at 1123).  In fact, in a prior holding after it conducted an extensive review of the private right of action issue with regards to the Higher Education Act, the Court found:

> "[I]t is important to note at the outset that nearly every court to consider the issue in the last twenty-five years has determined that there is no express or implied private right of action to enforce any of the HEA's provisions.

*McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1221 (11th Cir. 2002).

Likewise, as articulated by the Tenth Circuit:

> "[t]he express language of the HEA, and the regulations promulgated thereunder, do not "create a private cause of action, and there is nothing in the Act's language, structure or legislative history from which a congressional intent to provide such a remedy can be implied."

*L'ggrke v. Benkula*, 966 F.2d 1346, 1348 (10th Cir. 1992).  See also *Parks Sch. of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) ("There is no express right of action under the HEA except for suits brought by or against the Secretary of Education."); *Sanon v. Dep't of Higher Ed.*, 453 Fed Appx. 28, 29 (2d Cir. 2011) (same).

The HEA specifically does not provide for a private right of action, as it would run counter to Congress' express purpose of providing the Secretary of Education with exclusive enforcement authority to remedy violations of the HEA.  Consequently, Plaintiff's claims of ECMC not properly implementing a Federal offset under the HEA must fail.

## **CONCLUSION**

For all the foregoing reasons, ECMC respectfully requests that the Court enter an order dismissing Plaintiff's OTSC as against ECMC with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), and such other and further relief as the Court deems just and proper.


DATED:  Hackensack, New Jersey
            September 8, 2020

                                            Respectfully submitted,

                                            LAW OFFICES OF KENNETH L. BAUM LLC
                                            Attorneys for Defendant, Educational Credit Management Corporation


                                            By:    */s/ Kenneth L. Baum*
                                                   Kenneth L. Baum